CHARLES H. BLANCHARD, Respondent, *v.* ABRAHAM S. WOLFF, Appellant.

March 21, 1876.

A sued B in the St. Louis Circuit Court. He became nonsuit with leave, etc., and the general term set aside the non-suit. B appealed to the Supreme Court, but failed to give the bond required by section 2, p. 17, Acts of 1869. *Held*, that the Circuit Court had no power to grant an appeal without the appellant giving such bond.

APPEAL from St. Louis Circuit Court.

*Cause remanded for trial.*

*Marshall & Barclay*, for appellant, cited: Bateson *v.* Clark, 37 Mo. 31; Richardson *v.* George, 34 Mo. 108; Brady *v.* Connelly, 52 Mo. 19; Cowen *v.* St. Louis & Iron Mountain R. R. Co., 48 Mo. 556; Matlock *v.* Williams, 59 Mo. 105; Acock *v.* Acock, 57 Mo. 154; Burnes *v.* Whelan,

52 Mo. 520; Carver *v.* Thornhill, 53 Mo. 283; State *v.* Marchall, 36 Mo. 400; Collins *v.* Saunders, 46 Mo. 389; Wag. Stat. 1021, sec. 48, p. 1034, sec. 3, p. 1060, secs. 44, 45; Coleman *v.* McKnight, 4 Mo. 83; Routsong *v.* Pacific R. R. Co., 45 Mo. 236; Henri *v.* Grand Lodge, 59 Mo. 581; United States *v.* Gamble *et al.*, 10 Mo. 457; London *v.* King, 22 Mo. 336; Christy *v.* Myers, 21 Mo. 112; Blonset. *v.* Zink, 55 Mo. 455; Brown *v.* Foote, 55 Mo. 178; Berry *v.* Smith, 54 Mo. 148; Tilford *v.* Ramsey, 43 Mo. 410; McKay *v.* Underwood, 47 Mo. 185; Collins *v.* Bowmer, 2 Mo. 195; Boggers *v.* Cox, 48 Mo. 278; Rankin *v.* Perry, 5 Mo. 501; Perry *v.* Alrood, 5 Mo. 503; Strouse *v.* Drennan, 41 Mo. 289; Pearson *v.* Lovejoy, 53 Barb. 407; Isbella *v.* Pecot, 2 La. An. 387; Graves *v.* Black, 1 Mo. 221; Blunt *v* Shepard, 1 Mo. 219; Ringgold's Case, 1 Bland (Md.), 5; State *v.* Saline County, 51 Mo. 350–374; Sedgw. on Stat. & Const. Law (2d ed.), 40; Headlee *v.* Cloud, 51 Mo. 301; Wilson *v.* Allen, 3 How. (N. Y.) Pr. 369; Irwin *v.* Bank, 6 Ohio St. 81–89; Brightley's Dig. 258, sec. 2; Martin *v.* Hunter, 1 Wheat. 361; Seymour *v.* Freer, 5 Wall. 822; Anson *v.* R. R. Co., 23 How. 1; Manderville *v.* Riggs, 3 Pet. 490; Price *v.* R. R. Co., 40 Ill. 44; Wilgus *v.* Gettring, 19 Iowa, 82; Brobst *v.* Brobst, 2 Wall. 96; Pratt *v.* R. R. Co., 21 N. Y. 305; Dougherty *v.* Volloton, 38 N. Y. 455; Gillilan *v.* Gray, 13 Ill. 705; French *v.* Snell, 30 Me. 100; Commonwealth *v.* Dunham, 22 Pick. (Mass.) 11; Wag. Stat. 850, sec. 17.

*J. S. Garland,* for respondent, cited: Story on Bail. (8th ed.), secs. 2, 4, 61, 107, 117, 118, 261; Foster *v.* Essex Bank, 17 Mass. 479, 498; 2 Pars. on Con. 96; Nicholson *v.* Chapman, 2 N. H. 254; Rivera *v.* Ghio, 3 E. D. Smith (N. Y.), 264; Esmay *v.* Fanning, 9 Barb. 176; Wiser *v.* Chesley, 53 Mo. 547; Edw. on Bail. 88; Beardslee *v.* Richardson, 11 Wend. 25; McNabb *v.* Lockhart, 18 Ga. 495; Scott *v.* Crane, 1 Conn. 255; Slingerland *v.*

Morse, 8 Johns. 474 ; Rankin *v*. Perry, 5 Mo. 501 ; Tilford.
*v*. Ramsey, 43 Mo. 410 ; McKay *v*. Underwood, 47 Mo..
185 ; Coleman *v*. McKnight, 4 Mo. 236 ; Henri *v*. Grand.
Lodge, 59 Mo. 581 ; Routsong *v*. Pacific R. R. Co. 54 Mo..
236 ;Walter *v*. Cathcart, 18 Mo. 256 ; Thurman *v*. Jones,.
48 Mo. 235 ; Wordmanser *v*. Hitchcock, 40 Mo. 179 ; St.
. Jo. R. R. Co. *v*. Mahoney, 42 Mo. 467 ; Jones *v*. Fuller, 38,
Mo. 363.

GANTT, P. J., delivered the opinion of the court.

It appears from the record before us that Blanchard sued.
Wolff for the conversion of certain personal property ; that.
Wolff denied the conversion and set up new matter, to which.
Blanchard replied ; that a trial was had, at which Blanchard
became nonsuit ; that he filed a motion to set the nonsuit.
aside, which the court overruled ; and that he presented, and
the court signed, a bill of exceptions which omitted to set.
forth the motion to set the nonsuit aside, and failed to save
an exception to the action of the court overruling the
motion ; that the court in general term reversed the judg-
ment of the court at the special term ; that the defendant,
Wolff, filed a motion for rehearing, and that this motion was
overruled by the court in general term. Thus far we are able
to go, but here we are obliged to stop.   There is no appeal
in this case which authorizes us to '' hear and determine ''
the matters which have been argued, and argued with abil-
ity, by the counsel for appellant.   Obviously there is no final
judgment in the cause.   Plaintiff took a nonsuit with leave,.
etc.   The refusal of the court at special term to set this.
nonsuit aside was final as to him.   He properly went to the
general term to get rid of this judgment.   When the gen-
eral term reversed the judgment of the special term, the
nonsuit was set aside and the cause reinstated.   It stood
for trial *de novo*.   Clearly there was no final judgment, and
it is only from '' final judgments '' that an appeal is allowed
by the general law.   2 Wag. Stat. 1059, sec. 9.   But an
appeal is allowed from the judgments of the St. Louis

Circuit Court in general term, although such judgments. may not be final, under the peculiar provisions of section 2 of the act of February 25, 1869. Session Acts 1869, p. 17. In order to take an appeal under this section, of course compliance with its conditions must be shown. Only by observing those conditions could the defendant take such an appeal. One of these is the giving of a bond in a penal sum sufficient to secure to the plaintiff the satisfaction of any judgment that may be rendered in the cause, to be approved by the court. If the court had approved a bond in an insufficient penal sum, we might think ourselves warranted in allowing the appeal to stand, on condition of the appellant perfecting a proper bond here; but that is the utmost stretch of indulgence. Without any bond at all, the Circuit Court had no power to allow an appeal, and in this case no bond was offered or approved; consequently, there is *no appeal* from the decision of the Circuit Court in general term, and we order that fact to be certified to the Circuit Court, so that it may proceed with the determination of the cause in such manner as the state of the record will allow. All the judges concur.

GANTT, P. J., delivered the opinion of the court on motion for a rehearing.

Our opinion in this case was founded on the construction we gave to the acts organizing the St. Louis Circuit Court under the Constitution of 1865, and the several acts since passed prescribing the practice therein. In their motion for a rehearing, the counsel for appellant urge that these acts are materially modified by the act of February 28, 1871. We state briefly our reasons for overruling this motion, founded, as we conceive it to be, upon a misconception of these statutes.

The acts which ascertain the practice in the St. Louis Circuit Court are dated, respectively, December 19, 1865, February 25, 1869, and March 4, 1869. The last two dates

refer but to one act; the latter statute being passed to remedy a trivial mistake in the first, not, however, material to the subject under discussion.

The title of the act of December 19, 1865, is: "An act to provide for the reorganization of the St. Louis Circuit Court, and regulate proceedings therein." It is hardly necessary to recall to the memory of the bar that prior to the Constitution of 1865 there were three courts of civil jurisdiction in St. Louis county, to wit, the Circuit Court, the Court of Common Pleas, and the Land Court; that the object of the Constitution of 1865 was to abolish the last two, and to introduce, in respect of the Circuit Court of St. Louis county, a system of practice in imitation of that adopted in New York and Ohio—creating for the Circuit Court a special and a general term, and making the latter, in effect, an appellate court. This was all foreign to the practice which had for more than sixty years prevailed in Missouri. At the same time, for the rest of the State, District Courts, a system of intermediate appellate courts between the Circuit Court and the Supreme Court, were established. In order to give full effect to the constitutional requirements, some legislation was necessary; and this, as far as St. Louis was concerned, was furnished by the act of December 19, 1865. This act referred to St. Louis county only, and was, therefore, of a local and special nature. In the rest of the State, provision was also made by law for the establishment of District Courts and the practice therein. There was no District Court in St. Louis, nor was any case tried in this county liable to be reëxamined by a District Court. In the rest of the State, on the other hand, the distinction between special and general term of the Circuit Court was unknown.

The new practice was, from the first, disrelished by the bar of Missouri; but organic reforms were needed to get rid of its most objectionable features. In 1869, however, legislation was obtained which was certainly a considerable alle-

viation of the evils imposed by the system as adopted in 1865. The act of 1869 was entitled : "An act to amend 'an act to provide for the reorganization of the St. Louis Circuit Court, and regulate proceedings therein,' approved December 19, 1865," and, among other things, amended section 14 of that act so as to make it read : "A judgment or decree rendered or order made by said court at special term may be reversed, vacated, or modified at general term, for errors appearing in the records at special term or presented by exceptions taken thereat, * * * but from * * * any judgment rendered or decree or order made at general term, reversing or modifying a judgment rendered or decree or order made at special term, the party or parties aggrieved thereby may appeal to the Supreme Court in the same manner and with the like effect as provided for by law in respect to appeals from final judgments rendered by the said court at general term ; *provided*, that no appeal provided for in this section shall be allowed unless the party or parties taking such appeal shall first secure to the adverse party or parties in the cause the due performance and satisfaction of such final judgment as may be ultimately rendered in the cause, whether in the Supreme or Circuit Court, which security shall be given by a good and sufficient bond with two sureties," etc. The act of March 4, 1869, purporting to amend the act of February 25, 1869, does not change it in the passages quoted.

Thus stood the law when, in 1870, a constitutional amendment was adopted, enabling the General Assembly to sweep away the whole system of District Courts, which had become very odious to the bar and people of Missouri. Accordingly provision was made for taking cases, by writ of error or appeal, directly from the Circuit Court to the Supreme Court. Now, this had always been done in St. Louis, for there the District Court had never existed. Hence, St. Louis was not within the remedy, as it was not subject to the evil for which this act was intended. The

title of the act of February 28, 1871, was: "An act to provide for appeal and writs of error in civil cases, and concerning practice in the Supreme Court, and repealing chapter 135 of the General Statutes, and an act entitled 'An act to amend section 9 of chapter 172 of title 34 of the General Statutes of Missouri, concerning practice in civil cases,' approved January 24, 1868."

Turning to the acts repealed, we find that chapter 135 concerned practice in the District Courts. These being abolished by constitutional amendment, the act regulating practice in them was mere rubbish, and was thus swept away. The same remark applies to the act to amend section 9 of chapter 172 of title 34, General Statutes. All the rest of the act was directed to the practice in the Supreme Court, and to taking cases there by writ of error or appeal from *final judgments* rendered by the Circuit Courts, and only in the case of final judgments. The examination of the meaning of this term, however, is unnecessary. What we have to remark here is that this act had no relation to the practice in the St. Louis Circuit Court, where the special and general terms were still existing, as well as the practice in respect of them provided by the act of 1869. No more than a glance is necessary to prove this. If the construction contended for by appellant's counsel were sound, an appeal would have lain directly, at any time after February 28, 1871, from a final judgment in the St. Louis Circuit Court, at special term, to the Supreme Court. In other words, that act would have abolished the general term, which it could only have done by repealing the 15th section of Article 6 of the Constitution.

This is one answer, and we presume a sufficient one, to the suggestion that the act of February 28, 1871, repealed the act of February 25, 1869, in respect of such appeals as are the subject of that last-named act. It was in the most express terms provided that "no appeal provided for in this section" should be allowed, except under certain enu-

merated conditions, which it is conceded were not complied with here. Among the appeals thus provided for, were those "from any judgment rendered * * * at general term reversing * * * a judgment rendered * * * at special term." Such is undeniably the nature of the "judgment rendered at special term" which is now under examination, and, unless words have lost their meaning, the Circuit Court at general term had no power or jurisdiction to allow an appeal from such a judgment except in the manner provided by law. All other appeals were expressly forbidden.

The argument seems to us to be complete; but there is further confirmation of it drawn from the terms of the act of 1869 itself. The point made by the counsel moving for a rehearing is that the judgment of reversal rendered in this case by the general term was a "final judgment." We are aware that the Supreme Court has given an interpretation to the term, as used in the acts of 1865 and 1871, which may include judgments of reversal and remander. But both the rule and the reason of that interpretation fail of application to a statute which is careful to discriminate between "final judgments" and "judgments not final," and which expressly places judgments of reversal and remander in the latter category. The act of February 25, 1869, provides (sec. 2) for appeals "from an award of a new trial, and from any judgment rendered or decree or order made at general term, reversing or modifying a judgment rendered or decree or order made at special term, *in the same manner and with the like effect as provided for by law in respect to [of] appeals from final judgments rendered by the said court at general term.*" What is this but declaring that such judgments at general term, reversing, etc., are not "*final judgments,*" though they are, in respect of direct appeals to the Supreme Court, treated as if they were such? Here is an interpretation of the act "*ex visceribus statuti,*" which Lord Coke tells us, is "*optima interpretatio,*" or, in the words

of Chief Justice Marshall, "Every statute is its own best. interpreter." We have no occasion to resort to other famil-- iar rules for construing statutes and ascertaining their mean-- ing. Our Supreme Court has, indeed, frequently declared,. and in so doing has but observed the injunction contained in every recent revision of our laws (Rev. Code, 1845, p. 699, sec. 22 ; Rev. Code, 1855, p. 1027, sec. 23 ; Wag. Stat. 1872, p. 897, sec. 6), that a special statute will not be· construed to be repealed by a general act, and that, in any case, the repugnancy must be plain before the presumption of a repeal by implication will be indulged. *Finney* v. *Brant,* 19 Mo. 42 ; *Dunscomb* v. *Maddox,* 21 Mo. 144 ; *Mauro* v. *Buffington,* 26 Mo, 184 ; *State* v. *Macon County Court,* 41 Mo. 453 ; *State* v. *Judge of St. Louis Probate· Court,* 38 Mo. 529 ; *State* v. *Draper,* 47 Mo. 29 ; *St. Louis· v. Ind. Insurance Company, of Massachusetts,* 47 Mo. 146. We might invoke this rule of constuction, we think, with confidence, except that in our view of the matter neither the: act of February 25, 1869, nor that of February 28, 1871, is general—that is, neither professes to apply to the whole· State of Missouri. The first proclaims its limited scope on its face and in its title. It is confined in terms to St. Louis alone. The other respects all the counties of the State *except* St. Louis. Its meaning and limitation in this particu-- lar are somewhat less obvious, but equally unequivocal when carefully examined.

Whether the Supreme Court has in any instance taken· cognizance of a case purporting to be brought before it by appeal from such a judgment of the St. Louis Circuit Court at general term as this record discloses, where the statutory prerequisites of such an appeal have been disregarded, we· are not called on to determine. We are pretty sure, from· an examination of all the cases cited, that the point now before us has never been brought to the attention of the· Supreme Court. Therefore, even if it should appear that. the Supreme Court had in any case accepted the submission.

of a cause, after full argument by zealous and able counsel, in which the appeal had not been taken in conformity with the act of February 25, 1869, we should attach no sort of importance to a fact the influence of which on the decision of the court was thus disproved. If both parties acquiesced in the regularity of the appeal—if neither made any question on it—nothing would be more natural than that the defect, *though it really goes to the jurisdiction of the appellate court*, should escape its notice.

No other matter seems to require remark in the motion and reasons for a rehearing, and the motion is accordingly overruled, all the judges concurring.