# WILLIAM G. GREEN & WIFE *v.* THE ST. ALBANS TRUST CO.

*The St. Albans Trust Co. Forfeiture of Corporate Franchise. Scire Facias. Quo Warranto. Construction of Statute.* R. L. c. 72, ss. 1327, 1331.
R. L. c. 74, s. 1378.

1. The mode of process, by which the corporate franchises of an incorporated trust company may be adjudged forfeited, is by writ of *scire facias*, under the statute, R. L. c. 72, prosecuted in the name of the State, and not by complaint for a writ of *quo warranto*, prosecuted in the name of a private person, under chapter 74, R. L.

2. The statutory remedy by implication supersedes the common law.

COMPLAINT for a writ of *quo warranto*.

The complaint set forth, that the defendant, an incorporated trust company, commenced business about the first day of January, 1869, and continued to transact business under its charter until about the first day of August, 1883; that the defendant, on or about January 1, 1880, in accordance with the powers of its charter, received from the said Alice L. Green, wife of said Wm. Green, the sum of $2,000 on deposit; that the deposit was received under the provision of the charter, that, in case of the dissolution of the company by act of law or otherwise, it should have a preference; and that "by reason of the said deposit, which has ever since continued subject to the right and preference aforesaid, *she still remains a creditor* to an amount exceeding the sum of $500; and therefore the complainants say that they are interested in the matter of this complaint and the judgment herein sought; and prosecute this complaint in their own behalf and in the behalf of all others of like interest."

The complaint also set forth, that the defendant had misused its franchises, in that it had not invested its deposits in the prescribed securities, but had fraudulently and illegally loaned the same to its officers, who were financially

irresponsible; that on the first day of August, 1883, the deposits amounted to about the sum of $580,000, of which sum nearly $500,000 were illegally loaned to said officers; that the capital stock was wholly exhausted, but the directors had not repaired the same by assessment; that the corporation was hopelessly insolvent and unable from lack of funds to perform the function of a moneyed corporation; that its president had absconded from the State, and had been adjudged an insolvent; that the defendant, having become insolvent on or about the first day of August, 1883, then closed its doors, and refused payment to the said Alice, and to all other depositors; that it has not used its franchises since that time; that it is not possible for it to provide means of paying its depositors in full, nor do any of the stockholders or officers expect to or intend to perpetuate the existence of the corporation for the purpose mentioned in the act of incorporation; that the inspector of finance for the State of Vermont had proceeded against the defendant, and as a result a receiver was appointed by the court to take charge of the defendant's property and effects. The prayer was that, inasmuch as said Alice could not secure that preference guaranteed to her by the charter, the " corporate franchises of the said St. Albans Trust Company may be declared forfeited, and a judgment dissolving said corporation be entered according to law."

The answer, signed and sworn to by C. W. Rich, the receiver, and by H. E. Burgess, treasurer, claimed that the court ought not on the facts alleged, to grant the prayer; that said receiver entered upon the duties of his appointment, that he had collected debts due to the defendant, that he had made one dividend under the order of court, that he had brought suits, which were now pending, &c., and that the corporate powers of the trust company would be needed.

*See* the case of *Charles Dewey, inspector of finance*, v. *The St. Albans Trust Co., ante;* and the same case in 56 Vt. 476, for other facts bearing on this case.

*A. G. Safford* and *Farrington & Post*, for the relators.

The answer admits the misuse of the franchises, the unlawful loans, the impaired condition of the capital stock, the defendant's insolvency, &c.; but claims that the facts

are insufficient in law; that the court ought not in the exercise of a reasonable discretion to dissolve the corporation; and that the pendency of certain suits, instituted by the receiver, requires that the existence of the corporation should be continued. The facts stated are sufficient in law to warrant the interposition of the court. *State* v. *Com. Bank,* 33 Miss. 474; *State* v. *Real Estate Bank,* 5 Ark. 595; *Priest* v. *State,* 19 Md. 239; High Ex. Rem. ss. 648, 660, 949; Mor. Corp. 640, 652. *Quo warranto* is the proper remedy. Bou. Dic. tit. *scire facias;* 1 Bl. Com. 485; 23 Wend. 221; 21 N. J. 9; 28 Vt. 587. The dissolution of the corporation cannot injuriously affect the exertions of the receiver in collecting the assets. Mor. Corp. 661.

*Daniel Roberts,* for the defendant.

The petition is brought upon chapter 74, R. L. This is erroneous. The case was proper for a proceeding by *scire facias* under chapter 72, R. L. These two statutes are framed upon the distinction long recognized between the two processes. As to the distinction, *see* remarks of Ash-HURST, J., in *King* v. *Pasmore,* 3 T. R. 199, 244; 2 Kent Com. 313.

These two statutes are so radically unlike, that it will not do to confound them, or use either indifferently. The remedies are necessarily exclusive.

Ch. 72 is explicit in its command, that in order that " grants may be adjudged forfeited," s. 1329, " the mode of process shall be by writ of *scire facias* " (s. 1331); shall be made returnable to the County Court; be brought and prosecuted by the State's attorney in the name of the State; be tried by jury, &c.

This court therefore has no jurisdiction to entertain this petition for the purposes sought.

Again, the petitioners have no right in their own names alone, and without the sanction and joinder of the State's attorney, to institute these proceedings for the end sought. *Murphy* v. *Farmer's Bank,* 29 Pa. St. 415; High Ex. Rem. s. 654.

To take away a legislative grant without the consent or knowledge even of the sovereign making the grant, and that upon the application of a single person having an individual interest therein, would not be a discreet use of judicial power.

The dissolution of the corporation would embarrass the prosecution of pending suits.

The opinion of the court was delivered by

ROWELL, J. This is a complaint under chapter 74, R. L., for a writ of *quo warranto,* preferred and prosecuted in the name of the complainants alone, for the purpose of obtaining a judgment of forfeiture of the corporate rights and privileges of the defendant company.

At the common law, both *scire facias* and an information in the nature of a *quo warranto* were the appropriate remedies to enforce the dissolution of a corporation for cause of forfeiture; but our Legislature early made specific provision in this behalf by the act of October 23, 1797, entitled, "An act *directing* the mode of taking forfeitures of grants and charters," whereby it was provided that "*in all cases* in which the grantee or grantees shall have done or omitted any act or thing which shall amount to a forfeiture of his, her, or their grant or charter, the mode of process to ascertain the fact and take the forfeiture *shall be* by writ of *scire facias,* * * * brought forward and prosecuted in the name of the State, by the attorney of the State, or by any other person who shall think himself injured by the nonperformance of the condition of any such grant or grants," who should indorse his name on the writ as prosecutor, and give security for costs, and be liable to pay costs if he failed in the suit, and a trial by jury was accorded. St. 1797, c. 49.

This provision for a private prosecutor continued in the statute until the revision of 1839, when it was dropped out, and a provision incorporated, making it the duty of the State's attorney to prosecute on the application of twenty or

more freeholders, etc., and the statute has ever since remained substantially as now found in chapter 72, R. L., which defines the word *grant* as therein used to mean, among other things, "acts of incorporation for any purpose," provides for what they may be adjudged forfeited, and prescribes that "the mode of process *shall be* by writ of *scire facias*," returnable, in the case of corporations, to the County Court of the county in which any part of the business of the corporation is done, or, by the terms of the act, should be done; that the writ shall be prosecuted by the State's attorney of the county in which it is returnable, in the name of the State, and that he shall, on the application of twenty or more freeholders of the county, commence such writ and prosecute the same against a corporation, if, in his opinion, the grant of such corporation is forfeited, and the public good requires that it should be adjudged forfeited. The statute also provides that issues of fact shall be tried by jury, and that, notwithstanding a verdict of forfeiture, the grantee may show cause against a judgment of forfeiture, the court adjudging the matter according to equity and good conscience.

On the other hand, we had no statute providing for the remedy of *quo warranto*, except the general statute conferring jurisdiction of the writ on the Supreme Court, till the St. of 1876, which now forms chapter 74, R. L. This act was passed, not to extend the remedy of the writ, but to simplify and expedite the proceedings in cases proper for issuing the writ, which must be determined at common law.

We have then this case; an ancient statute, specially and positively providing a mode of process, procedure, and trial, to obtain an adjudication of forfeiture of corporate franchises and other legislative and governmental grants, and yet a different mode resorted to ; and the question is, Is the statutory mode exclusive? We think it is.

The fact that after an experience of more than forty years the Legislature changed the statute so as to take away the

right of private persons to prosecute under it, clearly indicates a purpose no longer to allow private persons in any mode to prosecute in such cases, but to confine the right to the State alone, which is usually the chief party in interest. Indeed, it is scarcely conceivable that the Legislature should prescribe with such particularity a mode of process and procedure, to be instituted and prosecuted in the name of the State, according a jury trial, and yet have left it to the option of private persons, in their own names or otherwise, to resort to a different remedy, and that too in a forum in which a jury trial cannot be had.

The words of the statute are, "the mode of process *shall be* by writ of *scire facias.*" This language is imperative in form and ordinary signification, and ought to be construed as obligatory if such be the intention of the framers of the act as collected from every part of it. It is true, the language is *affirmative*, and does not *necessarily* take away the common law remedy of *quo warranto;* but it will have that effect if the apparent intention of the act is that the two rights shall not exist together, as we think it is.

It is held that when an act that was before an offense at common law only is made an offense by statute, the common law on the subject is superseded by implication, the same as a statute is impliedly repealed by a subsequent statute that revises its whole subject-matter. *Commonwealth* v. *Cooley,* 10 Pick. 37; *State* v. *Boogher,* 71 Mo. 631.

In *Commonwealth* v. *Garrigues,* 28 Pa. St. 9, it was held that a statute, providing that the returns of all municipal elections should be subject to the inquiry and determination of the Court of Common Pleas of the County of Philadelphia upon the complaint of fifteen or more of the qualified voters of the proper ward or division, the court, in judging in the premises, to proceed upon the merits, and determine finally concerning the matter,—was binding on the State, although not named therein, and by necessary implication, excluded the remedy of *quo warranto.*

Section 9 of the Banking Co-partnership Act, 7 Geo. IV. c. 46, provides that all actions, suits, etc., to be commenced or instituted by any persons against such co-partnership, "shall and lawfully may" be commenced and prosecuted against one or more of the public officers for the time being of the co-partnership as the nominal defendant for and on behalf of the company. The remedy thus given is not in terms expressed to be a substitute for the common-law right of action; but from the nature of the case it was held in *Steward* v. *Greaves,* 10 M. & W. 711, that this must have been what the Legislature intended. The evil to be guarded against was, the inconvenience to which creditors would be put if they were driven to bring actions against parties as numerous as those of whom joint-stock banks might and probably would consist. The remedy provided was, the naming of a person who, for the purposes of litigation, should represent the company; and the anomalies that would be produced if this right were to co-exist with the previous common-law right of action were so great as to warrant the court in holding that that right must have been intended to be taken away altogether. Equally strong are the grounds for holding the remedy provided by the Forfeiture of Grants Act to be exclusive. Franchises are special privileges conferred by government upon individuals, and which do not belong to the citizens of the State or country generally of common right. The abuse of a franchise is a public rather than a private injury. Hence it follows, that proceedings having for their object the recovery of a forfeited franchise to the State, ought to be instituted and carried on by a public prosecutor or other authorized representative of the State, and not be left to the control of private parties who have no interest but their own to subserve. Such cases are clearly distinguishable from cases involving only the administration of corporate functions, and do not go to the life of the corporation itself.

Complaint dismissed with costs.